UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VICTOR KARP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-01531-JRS-TAB |
| ) | |
| WENDY KNIGHT, ) | |
| JAY HALL, ) | |
| ROBIN FEATHERSTON, ) | |
| ) | |
| Defendants. ) | |

**ENTRY GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

Victor Karp is a prisoner at the Correctional Industrial Facility (CIF), where he works in the brake shop. This action is based on Mr. Karp's allegations that his health has suffered from working without proper protective equipment. The defendants have moved for summary judgment. For the reasons discussed below, their motions are granted, and this action is dismissed.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set

out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for potentially relevant evidence. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572–73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II. Facts

Mr. Karp arrived at CIF in January 2020 and began working at the brake shop the following month. Dkt. 115-1 at 29:1–4 (Karp Dep.). The brake shop is a "joint venture" between Indiana Correctional Industries (a division of the Indiana Department of Correction), and Meritor, Inc. (a private business). Dkt. 115-4 at ¶ 5 (Featherston Decl.).

Wendy Knight has been CIF's Warden since 2011. Dkt. 115-3 at ¶ 2 (Knight Decl.). Robin Featherston has been Plant Manager at CIF since July 2019. Dkt. 115-4 at ¶¶ 1–2. She oversees daily operation of multiple industries at CIF, including the laundry, a furniture shop, and the brake shop. *Id.* at ¶ 4.

Since August 2019, Jay Hall has been employed by Meritor as the CIF brake shop supervisor. Dkt. 105-1 at ¶ 2 (Hall Decl.). As supervisor, Mr. Hall oversees brake shop operations and production and ensures compliance with Meritor policies. *Id.* at ¶ 4.

In the brake shop, prisoners work in seven-person pods to disassemble brake shoes. Each pod includes a banger, a loader, and five de-liners. Dkt. 115-2 at 70:19–23. The banger grabs a brake shoe from a skid and knocks a wiggle pin out of the assembly using a hammer. Dkt. 115-1 at 81:4–9. A loader then scrapes any dirt off the brake shoe and stages it near a de-liner. Dkt. 115-2 at 70:22–71:3. A de-liner then uses a press to pop rivets out of the brake shoe. *Id.* at 31:16–23. The disassembled brake shoes are then sent to a factory in Plainfield, where they are refurbished. *Id.* at 33:8–14.

Mr. Boyd is a de-liner. Dkt. 115-1 at 29:7–9. He works 60 hours per week—Monday through Saturday, 5:00 P.M. until 3:15 A.M. *Id.* at 43:16–19. Every time he pops a rivet out of a brake shoe, it generates dust, similar to a puff of smoke from a cigarette. Dkt. 115-2 at 32:9–21.

>Each brake shoe is affixed with a sticker containing the following warning:
>
>>Caution: Linings contain non-asbestos fibers. Possible cancer hazard. Avoid creating dust. Wear approved dust mask or respirator. See field maint. manual for details.

Dkt. 132-1 at 33.

Before March 2020, brake shop workers were provided two "light-duty" dust masks at the beginning of each shift. Dkt. 115-1 at 55:23–56:2; dkt. 132-1 at 37. The box of masks bore the following warning:

>Do not use for protection against any particulate which may be hazardous to breathe according to the manufacturer, or where a government approved respirator must be utilized to protect workers. This mask does not safely filter toxic dust or any gases or vapors.

*Id.* at 33. Meritor and the IDOC consider dust masks "optional" protective equipment for brake shop workers. Dkt. 105-1 at ¶ 9; dkt. 115-4 at ¶ 11; dkt. 116-3 at ¶ 13. Brake shop workers are required to wear steel toed boots, ear plugs, and safety glasses, but not masks. *Id.*

Since the spring of 2020, brake shop workers have been limited to one mask per shift. Dkt. 115-1 at 55:23–56:11. Ms. Featherston attributes this change to COVID-19 and "the high demand for masks across the country." Dkt. 115-4 at 2. In November 2020, brake shop workers began receiving surgical masks instead of light-duty dust masks. Dkt. 115-1 at 55:7–13. When Mr. Karp works in the brake shop, his mask becomes saturated with brake dust. *Id.* at 68:5–10.

In 2017 and 2019, Liberty Mutual Insurance conducted air quality tests in the brake shop. Dkt. 105-2 at 72–89. The stated purpose of the first test "was to evaluate worker exposure to respirable particulate and asbestos." *Id.* at 72. The stated purpose of the second test "was to evaluate worker exposure to manganese and respirable particulate." *Id.* at 83. "Conditions and factors . . . were representative of normal activity." *Id.* at 72, 83. "The employees' exposure assessments were based on air monitoring, observations of work practices, and discussions with the workers and

management." *Id.* Both times, Liberty Mutual determined that particulate exposure was "well below" applicable exposure limits. *Id.*

Mr. Hall and Warden Knight both received the results of the 2017 test in an e-mail stating, "All results were well below the limits for both respirable dust and Asbestos. . . . These results are what allows us to call the respirators (dust masks) voluntary use only." Dkt. 115-2 at 255.

A third air quality test was completed in August 2021. Dkt. 132-1 at 269 (Featherston Interrogatories). The results of that test are not in the record.

Mr. Karp states that vents and fans in the brake shop were covered up in March 2020 due to cold temperatures. Dkt. 132-1 at 262. It does not appear that they were covered over a prolonged period. He also states that "[t]he air handling system was broke from January 2020 until August 2020 when an inspector came in and found that the air filter was destroyed and not filtering dust properly." *Id.* at 263. Neither the problems with the air handling system nor this inspection are documented in the record. Mr. Karp states that another inmate told him about the problem and the inspection. Dkt. 115-2 at 136:13–137:5.

After he began working at the brake shop in February 2020, Mr. Karp began experiencing nosebleeds, coughing fits, and sinus infections. Dkt. 132-1 at 262. He requested medical care in March 2020, writing, "I'm having a rough time breathing and I'm hacking up black stuff." Dkt. 105-2 at 140. However, he reported that he was feeling better when a nurse called him to sick call on March 18. *Id.* On June 18, 2020, Mr. Karp reported that he was experiencing nosebleeds, sore throat, and cough. *Id.* at 169. These are the only medical records documenting Mr. Karp's symptoms. He states that he did not continue to seek treatment for these conditions "because it was pointless." Dkt. 132-1 at 263.

Mr. Karp began filing administrative grievances complaining of the lack of protective masks in the brake shop, but none of them refer to nosebleeds, a sore throat, coughing, headaches, or any other medical symptoms. Dkt. 132-1 at 76–89.

### III. Analysis

"Prisons are not required to provide a maximally safe environment, but they must address easily preventable, observed hazards that pose a significant risk of severe harm to inmates." *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016) (cleaned up). A prison official "violates the Eighth Amendment upon exhibiting 'deliberate indifference to a substantial risk of serious harm to an inmate.'" *Thomas v. Blackard*, 2 F.4th 716, 719 (2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)).

"A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they" created "an excessive risk to the inmate's health and safety." *Id.* (cleaned up). Subjectively, "the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate." *Id.*

Viewed in the light most favorable to Mr. Karp, no evidence shows that any defendant was subjectively aware of a hazardous condition that presented an excessive risk of harm.

Before Mr. Karp arrived at the brake shop, the defendants had no reason to believe that de-lining brakes with a standard dust mask exposed inmates to an unreasonable risk of serious harm. The brake shoes Mr. Karp de-lines warn of a possible cancer hazard and recommended using an approved mask or respirator. Dkt. 132-1 at 33. But Defendants Knight and Hall received professionally-administered tests in 2017 and 2019 conveying that the brake shop was safe even for unmasked workers. No evidence indicates that the brake shoes were any different, or that they

were labeled any differently, by the time Mr. Karp arrived. Based on the test results, the defendants could read the warning label on the brake shoes and determine that the brake shop was not an environment where a government-approved mask or respirator was necessary. *See* dkt. 132-1 at 37.

Mr. Karp argues extensively that the air quality tests were not conducted under representative work conditions. *See, e.g.*, dkt. 115-1 at 79:14–82:5. Specifically, he believes different methods were used to disassemble brake shoes on testing days and generated less dust. But he was not present for the tests and therefore has no personal knowledge of what methods were used, *see* Fed. R. Evid. 602, and he cites no other evidence to support his assertions.

Mr. Karp also argues that the air quality tests were conducted over an eight-hour shift rather than a ten-hour shift and therefore ceased to be accurate once brake shop workers began working ten hours at a time. Dkt. 132 at ¶¶ 8, 10. But Liberty Mutual collected samples over a *portion* of a shift, then extrapolated data to determine an "eight-hour, time-weighted" average, which the Court understands to be a standard measure of air quality. Dkt. 105-2 at 72–73, 83–84. If there is a difference between brake shop workers' exposure to hazardous particulate over ten hours as opposed to eight, nothing in the record shows that it is an "observed hazard[] that pose[s] a significant risk of severe harm." *Anderson v. Morrison*, 835 F.3d at 683.

Mr. Karp's allegations of a broken air handling system are based entirely on inadmissible hearsay, *see* dkt. 115-2 at 136:13–137:5, so the Court cannot credit them at summary judgment. And his allegations that vents and fans were covered in March 2020 do not objectively describe a condition creating an excessive safety risk without evidence that the condition was prolonged. *Thomas*, 2 F.4th at 719.

Finally, Mr. Karp did not give the defendants any reason to believe brake shop workers were at risk of serious harm. He filed grievances concerning the potentially toxic nature of the brake dust and the quality of inmates' masks, but, again, those facts do not appear to have changed since the air quality tests showed that masks were not necessary to keep brake shop workers safe. Moreover, his complaints did not notify the defendants that he was suffering any adverse health conditions from working in the brake shop. And, if his health has been affected at all, the effects have been limited to nosebleeds, headaches, coughs, and sore throats so minor and infrequent that he only bothered to mention them to the medical staff two times.

No reasonable juror could conclude that the defendants were deliberately indifferent to Mr. Karp's safety. They are entitled to summary judgment.

### IV. Conclusion

The defendants' motions for summary judgment, dkts. [105] and [113], are **granted**. This action is **dismissed with prejudice**. The **clerk is directed** to enter **final judgment**.

IT IS SO ORDERED.

Date: 3/7/2022

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

VICTOR KARP
149143
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

Tiaundra Marie Gordon-Foster
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. (Indianapolis)
tiaundra.gordon-foster@ogletree.com

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov

Brandon M. Shelton
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. (Indianapolis)
brandon.shelton@ogletreedeakins.com

Benjamin Charles Wade
INDIANA ATTORNEY GENERAL
ben.wade@atg.in.gov